## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**DEVONTA PIPKIN,**                                                    **PETITIONER**

**v.**                                                    **No. 3:23CV434-MPM-JMV**

**NATHAN BURL CAIN, ET AL.**                                                    **RESPONDENTS**

### MEMORANDUM OPINION

This matter comes before the court on the petition of Devonta Pipkin, through counsel, for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has moved to dismiss the petition; Pipkin has responded to the motion, and the State has replied. The matter is ripe for resolution. For the reasons set forth below, the State's motion to dismiss will be granted, and the instant petition will be dismissed with prejudice as untimely filed and without substantive merit.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id.* Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

### Facts and Procedural Posture[1]

**Guilty Plea and Sentence.**

Pipkin was jointly indicted with four other co-defendants on three counts: conspiracy (Count 1); burglary (Count 2); and capital murder (Count 3). Exhibit A (Indictment); *see also* SCR, 1st PCR Supp. Vol. at 8–9.[2] On June 16, 2014, Pipkin pled guilty to a reduced charge of deliberate-design murder (first degree murder). Exhibit B (Petition to Enter Plea of Guilty); *see also* SCR, 1st PCR Supp. Vol. at 50–74 (Guilty Plea Hearing Transcript). In exchange for his guilty plea, the charges in Counts 1 and 2 were remanded to the files, and Count 3 was reduced from capital murder to deliberate-design murder. Exhibit B; Exhibit C (Order on Agreed

---

[1] The court has drawn the facts and procedural posture from the State's motion to dismiss, as they are both undisputed and well-documented.

[2] The court will reference Pipkin's first state post-conviction appellate record in Cause No. 2018-CT-436-COA as "SCR, 1st PCR," with the corresponding volume and page number; his second state post-conviction record in Cause No. 2020-M-1348 as "SCR, 2nd PCR," with the corresponding volume and page number; and his third state post-conviction appellate record in Cause No. 2021-CT-517-COA as "SCR, 3rd PCR," with the corresponding volume and page number.

Motion to Reduce Charges); *see also* SCR, 1st PCR Supp. Vol. at 52–53.   On June 16, 2014, the circuit court sentenced Pipkin to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC).   Exhibit D (Sentence of the Court) (with a signature date of June 17, 2014, and filing date of June 19, 2014); *see also* SCR, 1st PCR Supp. Vol. at 71.

**First Post-Conviction Proceeding.**

On June 16, 2017, Pipkin, through counsel, filed his first motion for post-conviction relief (PCR motion)—exactly three years from the date of his guilty plea.   SCR, 1st PCR at 9–38.   Pipkin's counsel then filed two amended PCR motions.   SCR, 1st PCR at 39–92.   He alleged claims of:   (1) insufficient factual basis for his plea; (2) involuntary guilty plea; (3) innocence based on "newly discovered evidence" of two co-defendants' affidavits; and (4) ineffective assistance of counsel for failure to "investigate the charges alleged in the indictment." SCR, 1st PCR at 9–92.   On March 9, 2018, the circuit court denied Pipkin's request for post-conviction relief.   Exhibit E (SCR, 1st PCR at 95–101).

In denying relief, the circuit court found that Pipkin's ineffectiveness and involuntary-plea claims were unsupported, vague, and contrary to the record – and that his "newly discovered evidence" and insufficient-evidence claims were meritless.   Exhibit E.   On his insufficient-factual-basis claim, the circuit court detailed the State's offer of proof that included "the statements of one or more co-defendants, the statements of an uninvolved witness and corroborating DNA evidence."   Exhibit E at 6.   The circuit court also acknowledged that Pipkin "was even provided an opportunity to contest the statements made by the State in its offer of proof and specifically stated that he did not dispute, disagree with, or need to clear up anything that the State said."   Exhibit E at 6.   The circuit court thus determined "with the utmost confidence that the State offered a sufficient factual basis for [Pipkin]'s plea, that the prosecution

could prove [Pipkin] guilty of the crime charged, and the substantial evidence of [Pipkin]'s guilt exists." Exhibit E at 6.

The circuit court also analyzed Pipkin's newly-discovered-evidence claim and the attached affidavits of two of his co-defendants. Exhibit E at 4–5. The circuit court explained that alleged "newly discovered evidence is relevant only in situations where a defendant went to trial and was convicted" because "[w]hen a defendant pleads guilty, he is admitting that he committed the offense," which "negates any notion that there is some undiscovered evidence which could prove his innocence." Exhibit E at 5 (citing *Townes v. State*, 88 So. 3d 812, 815 (Miss. Ct. App. 2012) (quoting *Jones v. State*, 915 So. 2d 511 (Miss. Ct. App. 2005)). As the circuit court had already determined that Pipkin's "plea was voluntary and intelligently made," it determined his newly-discovered-evidence argument was meritless. Exhibit E at 5.

Pipkin, through counsel, appealed the circuit court's denial of post-conviction relief. SCR, 1st PCR, Briefs. Pipkin argued: (1) the State failed to establish a sufficient factual basis for Pipkin's plea; (2) Pipkin received ineffective assistance of counsel evidenced by statements of two of his co-defendants; and (3) those statements also proved his innocence. SCR, 1st PCR, Briefs. The Mississippi Court of Appeals affirmed the circuit court's denial of post-conviction relief. Exhibit F (*Pipkin v. State*, 296 So. 3d 90 (Miss. Ct. App. 2019), *reh'g denied*, Feb. 19, 2020, *cert. denied*, 293 So. 3d 832).

The Mississippi Court of Appeals agreed with the circuit court "that a factual basis supported Pipkin's guilty plea." *Pipkin*, 296 So. 3d at 92; *see also* SCR, 1st PCR, Supp. Vol. at 55–61. "Most importantly, Pipkin agreed under oath to the factual basis recited by the State." *Pipkin*, 296 So. 3d at 92; *see also* 1st PCR, Supp. Vol. at 61, 68. Further, when "given the opportunity to disagree with the factual basis," he "did not" and apologized 'for the way it

happened" because he "guess[ed] [he] was at the wrong place at the wrong time. It wasn't supposed to happen like that is all [he] got to say.'" *Pipkin*, 296 So. 3d at 92; *see also* SCR, 1st PCR, Supp. Vol. at 61, 72.

Applying the *Strickland* standard, the Court of Appeals further concluded that Pipkin's claim of ineffective assistance of counsel was meritless. *Pipkin*, 296 So. 3d at 92 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The court noted that "Pipkin insisted that he was satisfied with his attorney's representation" at his plea hearing and stated that he did not have any complaints about him. *Pipkin*, 296 So. 3d at 93.

In addressing his ineffectiveness claim, the court also analyzed Pipkin's alleged "newly discovered evidence" of his innocence, which consisted of statements from two of his co-defendants, Nicholas Sledge and LaShaundra McNeal, belatedly proclaiming that Pipkin was not involved in the crimes – contrary to the statements they had originally provided to the State. *Pipkin*, 296 So. 3d at 92–93. The court explained that "the State had statements from all four of Pipkin's co-defendants, each of whom indicated Pipkin's involvement in the crime in varying degrees," and "all four, including Sledge and McNeal, agreed that Pipkin was involved in the decision to rob [the victim]." *Id.* The court thus aptly recognized that "[e]ven if Sledge and McNeal recanted, the two other co-defendants gave statements indicating that Pipkin was involved and was carrying a gun[,] [a]nd Pipkin swore under oath that he was guilty of murdering [the victim]." *Id.* at 93. The Mississippi Court of Appeals thus held that "Pipkin d[id] not show how the outcome of his case would have been different." *Id.*

The Mississippi Court of Appeals denied Pipkin's request for rehearing on February 11, 2020, and the Mississippi Supreme denied certiorari review on May 21, 2020. Exhibit G.

**Second Post-Conviction Proceeding**.

- 5 -

Over six months later, Pipkin, through counsel, filed a second PCR motion in the Mississippi Supreme Court. SCR, 2nd PCR at 2–29. On December 18, 2020, the Mississippi Supreme Court dismissed Pipkin's second PCR motion for lack of jurisdiction because he "entered a guilty plea" and "never ha[d] a direct appeal of his conviction and sentence[.]" Exhibit H (citing Miss. Code Ann. § 99-39-7); SCR, 2nd PCR at 1.

**Third Post-Conviction Proceeding**.

Pipkin, through counsel, filed his third PCR motion in the Tate County Circuit Court on January 12, 2021. SCR, 3rd PCR at 9–45. Pipkin re-urged his claim that "he [wa]s actually and factually innocent" and, in support, attached the affidavits of all four of his co-defendants (including the two from his first PCR motion). SCR, 3rd PCR at 9–45. On April 9, 2021, the Tate County Circuit Court dismissed Pipkin's third post-conviction motion as successive and untimely. Exhibit I.

The circuit court explained that "to be excepted from the procedural bars discussed above, Pipkin must demonstrate … that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence." Exhibit I at 1–2. The circuit court thus reviewed Pipkin's claim that "newly discovered facts and evidence prove[d] his actual innocence" and analyzed the attached "affidavits of his indicted co-defendant[s]." Exhibit I at 2. The circuit court explained that in each affidavit, the "affiant sw[ore] that Pipkin either 'did not conspire or participate in the events that led to the death of' the victim in this case or that the affiant 'did not conspire with' Pipkin and otherwise ha[d] no personal knowledge of Pipkin's participation in the same events." Exhibit I at 2.

First, the circuit court acknowledged that it had "already considered and dismissed" Pipkin's arguments. Exhibit I at 2. And the circuit court reiterated that Pipkin's claim of alleged "newly discovered evidence is relevant only in situations where a defendant went to trial and was convicted" because "[w]hen a defendant pleads guilty, he is admitting that he committed the offense," which "negates any notion that there is some undiscovered evidence which could prove his innocence." Exhibit I at 2 (citing *Townes v. State*, 88 So. 3d 812, 815 (Miss. Ct. App. 2012) (quoting *Jones v. State*, 915 So. 2d 511 (Miss. Ct. App. 2005))). Nonetheless, the circuit court determined that Pipkin "failed to demonstrate that the purported testimony of his co-defendants … was not available at the time of his plea to prove that his explicit admission of guilt in this case was anything but the truth." Exhibit I at 3. "While his co-defendants may have changed their stories, … *Pipkin was not convicted on the testimony of his co-defendants in this case*"—he "explicitly admitted his guilt in open court after hearing the State's offer of proof." Exhibit I at 3 (emphasis added). The circuit court determined that Pipkin's newly-discovered-evidence claim was meritless, recognizing that "[i]f Pipkin was, in fact, innocent, it cannot be argued that he was not aware of his innocence at the time of his guilty plea." Exhibit I at 4.

Pipkin, through counsel, appealed and re-urged his "newly discovered evidence" of his innocence. SCR, 3rd PCR, Briefs. The Mississippi Court of Appeals affirmed the circuit court's dismissal of Pipkin's untimely and successive post-conviction motion. Exhibit J (*Pipkin v. State*, 350 So. 3d 1147 (Miss. Ct. App. 2022), *reh'g denied*, Aug. 23, 2022, *cert. denied*, 350 So. 3d 234). The Mississippi Court of Appeals found that "on its face," Pipkin's post-conviction motion was both untimely and successive. *Pipkin*, 350 So. 3d at 1150. The court then discussed and rejected "Pipkin's contention that because he raised a claim of 'actual

innocence' for the first time, his [post-conviction] motion [wa]s not barred[.]" *Id.* Indeed, the court noted that Pipkin "raised substantially the same issues in his first PCR motion" that he raised in his third PCR motion, "albeit repackaged." *Id.* The court found that "none of the [listed] procedural-bar exceptions appl[ied,]" particularly "new evidence not reasonably discoverable at trial." *Id.* Pipkin also failed to establish "an error affecting his constitutional rights" or that "he was actually and factually innocent." *Id.*

The court concluded that the statements of Pipkin's co-defendants "d[id] not constitute newly discovered evidence that were not available to Pipkin at the trial, or in [his] case, the plea hearing" because they "could have been discovered through due diligence before the plea hearing." *Id.* at 1151. To be sure, those "co-defendants' [original] statements were provided to Pipkin's attorney during discovery and would have been subject to cross-examination." *Id.* Likewise, the court found that the co-defendants' "new," recanted statements were "suspicious," impeachable," and "unreliable." *Id.* at 1152. Indeed, the court noted that the Mississippi "Supreme Court has described recanted testimony as 'perjury.'" *Id.* After "the State presented portions of the co-defendants' statements given during the police investigation" at Pipkin's plea hearing, Pipkin did not "dispute[] any of the facts" nor did he "clarify any point." *Id.* The Mississippi Court of Appeals thus held that Pipkin "failed to meet all of the prongs of the newly-discovered-evidence standard[.]" *Id.*

The Mississippi Court of Appeals also rejected Pipkin's argument that "the actual innocence doctrine itself is a fundamental constitutional error worthy of exception" to the procedural bars. *Id.* at 1152–53. The court discussed that "successive actual-innocence claims 'are extremely rare,'" "partly due to the fact that actual innocence claims are a '*gateway* for federal *habeas* review of a procedurally defaulted claim of constitutional error.'" *Id.* at 1152

(citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *McQuiggin v. Perkins*, 569 U.S. 383, 393 (2013); *House v. Bell*, 547 U.S. 518, 537–38 (2006)) (other citations omitted) (emphasis added).

The court also acknowledged that to prove "actual innocence" a "petitioner must not only show that he has newly discovered evidence that proves his innocence, but also that he has a constitutional claim for review on the merits." *Id.* (citing *Herrera v. Collins*, 506 U.S. 390, 401 (1993) ("Few rulings would be more disruptive ... than to provide for federal *habeas* review of freestanding claims of actual innocence.")) (other citation omitted). Pipkin did not assert a constitutional claim, but to the extent he raised a new claim of ineffective assistance of counsel for the first time on appeal, the court determined that it was meritless. *Id.* The Mississippi Court of Appeals thus held that "Pipkin ha[d] not shown that he ha[d] a procedurally viable claim or that an exception to the procedural bars exists" and "affirm[ed] the circuit court's order." *Id.*

The Mississippi Court of Appeals denied Pipkin's request for rehearing on August 23, 2022, and the Mississippi Supreme Court denied certiorari review on November 15, 2022. Exhibit K.

**Federal *Habeas Corpus* Petition**.

One year later, on November 15, 2023, Pipkin, through counsel, filed his federal petition for a writ of *habeas corpus* and memorandum in support. Docs. 1, 2. Pipkin alleges that "his due process rights and his rights to a jury trial were violated when his sentence was not vacated by the state courts." Doc. 1 at 5. Pipkin also presents a claim of "actual innocence" and attaches the same four affidavits of his co-defendants that he presented to the state courts. Doc. 1 at 5–6; Doc. 1-4 at 25–28. Pipkin also states that his "conviction is unconstitutional pursuant to *Jackson v. Virginia*, alleging that "he was sentenced based upon insufficient evidence[.]"

Doc. 1 at 2; *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Pipkin requests that the "Court vacate his sentence and allow him a fair and complete defense at trial" because holding "otherwise would be a miscarriage of justice." Doc. 1 at 6. Pipkin did not address the issue of timeliness in his petition, but touched on the issue in his response to the instant motion to dismiss.

### The Petition Is Untimely Filed

As discussed below, the instant petition for a writ of *habeas corpus* is untimely filed.

Decision in this case is governed by 28 U.S.C. § 2244(d), which provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or the laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U. S.C. § 2244(d)(1) and (2).

Mr. Pipkin's guilty plea became final on September 17, 2014. The Tate County Circuit Court sentenced Pipkin on his murder plea on June 16, 2014. SCR, 1st PCR, Supp. Vol. at 71.

The circuit court entered its sentencing order the next day, June 17, 2014, and it was filed on June 19, 2014. Exhibit D. Under state law, there is no direct appeal from a guilty plea. Miss. Code Ann. § 99-35-101. A Mississippi petitioner's guilty plea becomes final under AEDPA ninety days after sentencing on his plea—when the time for seeking direct review of the guilty plea in the Supreme Court expires. *See Wallace v. Mississippi, et al.*, 43 F.4th 482, 497–501 (5th Cir. 2022). Pipkin's guilty plea and sentence thus became final under AEDPA on September 17, 2014: (June 19, 2014 (the date Pipkin's sentencing order was filed) + 90 days). *Id.*; *see also Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Under the AEDPA, the deadline for Pipkin to seek federal *habeas corpus* relief became September 17, 2015. *See* 28 U.S.C. § 2244(d). As discussed below, Pipkin is not entitled to statutory tolling or equitable tolling of the limitations period; neither has he made a valid showing of actual innocence to render his petition timely. As such his deadline for seeking *habeas corpus* relief remains September 17, 2015.

**No Statutory Tolling**

To invoke statutory tolling of the one-year federal *habeas corpus* limitations period, Pipkin must have "properly file[d]" an application for post-conviction relief as described in 28 U.S.C. § 2244(d)(2), prior to September 17, 2015 (the date the limitations period expired). *See Jones v. Lumpkin*, 22 F.4th 486, 490 (5th Cir. 2022), *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (state *habeas corpus* petition filed *after* the statute of limitations under 28 U.S.C. § 2244(d)(2) had expired does not toll the limitations period). As set forth in detail above, Pipkin filed his first PCR motion on June 16, 2017; his second PCR motion in December 2020; and his third PCR motion in January 2021. These three motions were filed *after* the federal *habeas corpus* limitations period had expired (September 17, 2015); as such, the petitioner is not entitled

- 11 -

to statutory tolling, and the deadline for seeking *habeas corpus* relief remained September 17, 2015.[3]

### No Equitable Tolling

Pipkin does not enjoy equitable tolling of the one-year *habeas corpus* limitations period. "The doctrine of equitable tolling preserves a [petitioner's] claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir.2000) (per curiam) (internal quotations omitted). The one-year limitations period of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") in 28 U.S.C. § 2244(d) is not jurisdictional; thus, it is subject to equitable tolling. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002). For this reason, a district court may toll the AEDPA limitations period. *Id.* at 229–30.

The decision whether to apply equitable tolling turns on the facts and circumstances of each case. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.2000); *see also Alexander v. Cockrell*, 294 F.3d 626, 628 (5th Cir.2002) (per curiam). However, a court may apply equitable tolling only "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *see also Minter v. Beck,* 230 F.3d 663, 666–67 (4th Cir.2000) ("[E]quitable tolling of the AEDPA's one year limitation period is reserved for those rare instances where – due to

---

[3] Neither is Pipkin entitled to statutory tolling of the limitations period for his latter two PCR motions because: (1) his second PCR motion was filed in a court without jurisdiction, and (2) his third PCR motion was untimely. Exhibit F; *see Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (holding that "an application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings"); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (holding that a state post-conviction motion rejected by the state court as untimely "was not 'properly filed,' and [the petitioner wa]s not entitled to statutory tolling under § 2244(d)(2)").

circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.") (quotation omitted).

The petitioner bears the burden of establishing that equitable tolling is warranted. *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), modified on reh'g, 223 F.3d 797 (2000) (per curiam). To meet this burden, he must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing his [§ 2254 petition].[4] *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007). To invoke equitable tolling the petitioner need only use reasonable diligence, not maximum feasible diligence. *Holland v. Fla.*, 560 U.S. 631, 653, 130 S. Ct. 2549, 2565, 177 L. Ed. 2d 130 (2010) (internal citations and quotations omitted). However, a petitioner's delay of even four months can show that he has not diligently pursued his rights. *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001).

First, in his petition, Pipkin addressed neither its timeliness nor whether equitable tolling may apply; however, he touched on these issues in his response to the State's motion to dismiss. Pipkin, through counsel, filed the instant petition for a writ of *habeas corpus* precisely one year from the date the Mississippi Supreme Court denied certiorari review of his untimely and successive third PCR motion. As explained above, however, the AEDPA requires that a petition be filed within one year *of the date that a petitioner's judgment of conviction becomes final* (not the date when the deadline for seeking state post-conviction collateral relief expires). The federal *habeas corpus* limitations period begins when the petitioner's conviction becomes final –

---

[4] Though *Lawrence* involved an inmate's challenge to his federal conviction and sentence under 28 U.S.C. § 2255, the same equitable principle applies to an inmate's challenge to a state conviction and sentence under 28 U.S.C. § 2254. *See Davis v. United States*, 417 U.S. 333, 344, 94 S. Ct. 2298, 2304, 41 L. Ed. 2d 109 (1974).

and (unless statutory or equitable tolling apply) *continues to run until a year elapses*. Thus, the federal *habeas corpus* limitations period can expire while the state post-conviction collateral relief limitations period is still running. As discussed above, Pipkin did not properly seek state post-conviction collateral relief within a year after his conviction became final (as all three state applications were filed after the initial *habeas corpus* deadline).

Pipkin's conviction became final on September 17, 2014; his federal *habeas corpus* limitations period thus expired one year later – on September 17, 2015. He waited more than eight years to file his federal petition – in November 2023. 28 U.S.C. § 2244(d). He does not enjoy equitable tolling based upon his mistaken belief that his petition was timely because he filed it within a year of the Mississippi Supreme Court's denial of certiorari review in his third post-conviction proceeding. *See Tsolainos v. Cain*, 540 F. App'x 394, 397 n.3 (5th Cir. 2013) (even if a petitioner has "properly filed" a state post-conviction motion, the one-year clock does not reset when that action concludes; instead, it resumes from where it left off). Pipkin has been represented by counsel in all his post-conviction proceedings, including his current federal proceeding. Hence, he has not shown that an extraordinary circumstance existed to warrant equitable tolling, as he has not identified a circumstance beyond his control that prevented him from timely filing the instant petition.

In addition, the petitioner was diligent neither in his pursuit of relief in state court (waiting until just before the filing deadline) – nor in his pursuit of *habeas corpus* relief, waiting nearly one year (which would have approached the *habeas corpus* deadline – had the limitations period not already expired). This lack of diligence also militates against equitable tolling. For these reasons, Pipkin is not entitled to equitable tolling of the limitations period, and his federal petition remained due by September 17, 2015.

**Pipkin Has Not Shown "Actual Innocence"**
**To Overcome the One-Year Limitations Period**

The petitioner argues that he has newly discovered evidence of his actual innocence of deliberate design murder – *a charge to which he pled guilty*. He presented this argument twice to the trial court and twice to the appellate court; both courts rejected the evidence and arguments. To overcome the expiration of the AEDPA limitations period, a petitioner must make a credible showing of actual innocence, which requires him to produce new evidence sufficient to persuade the court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." *McQuiggin*, *v. Perkins*, 569 U.S. 383, 386 (2013). As discussed below, the petitioner has not met this burden; as such, he has not made a credible claim of actual innocence to overcome the time bar.

Pipkin's guilty plea is a nearly insurmountable obstacle to his invocation of the actual innocence exception to the limitations period of 28 U.S.C. § 2244(d)(2). Courts have explicitly discussed whether a petitioner who has pled guilty may invoke actual innocence to extend the one-year *habeas corpus* limitations period, and those courts are split. *See McQuiggin v. Perkins,* 133 S.Ct. 1924 (2013) (holding that actual innocence can overcome the one-year *habeas corpus* limitations period). Some courts have held that a plea of guilty forecloses invocation of actual innocence. *See, e.g., Thomas v. Stephens*, 2014 WL 929031, at *3 (N.D. Tex. Mar. 7, 2014); *see also Jackson v. United States*, 2013 WL 5295701 (E.D. Wis. Sept. 18, 2013); *Sidener v. United States*, 2013 WL 4041375 (C.D. Ill. Aug. 8, 2013); and *United States v. Cunningham*, 2013 WL 3899335 (S.D. Tex. July 27, 2013). Other courts have used the *McQuiggin* analysis

- 15 -

even when the petitioner pled guilty. *See, e.g., Green v. Williams*, No. 3:11-CV-00455-HDM, 2013 WL 4458971, at *1 (D. Nev. Aug. 16, 2013).

The Fifth Circuit has not yet *explicitly* addressed whether a guilty plea precludes a petitioner from arguing actual innocence to extend the limitations period under *McQuiggin*; however, before *McQuiggin* was decided, the Supreme Court and the Fifth Circuit have both permitted such claims. *See Bousley v. United States*, 523 U.S. 614, 118 S. Ct. 1604, 140 L.Ed.2d 828 (1998) (remanding the case to permit petitioner an opportunity to make a showing of actual innocence under *Schlup* to excuse a procedural bar to review of his guilty-plea conviction); *see also United States v. Torres*, 163 F.3d 909, 912 (5th Cir. 1999) (Wisdom, J.) (applying actual innocence to claim by defendant who pled guilty); *id*. at 914 (Dennis, J., concurring) (citing *Bousley* as the first case in which the Court recognized the possibility of applying actual innocence exception to a defendant on *habeas corpus* review after a guilty plea). Again, though instructive, these cases were decided before *McQuiggin*.

The courts which have found that actual innocence excuses untimeliness (or some other procedural bar) have noted the daunting challenge the petitioner faces when he has pled guilty to the charge. *See Chestang v. Sisto*, 522 F. App'x 389, 390 (9th Cir. 2013) (a plea of guilt "seriously undermine[s]" a later claim of actual innocence); *Diamond v. Clarke*, No. 7:18-cv-00580, 2019 WL 4546918, at *4 (W.D. Va. Sep. 19, 2019) (finding it "even more difficult" to show actual innocence when a petitioner pled guilty); *Smith v. Warden*, 7:17CV00072, 2018 WL 3130948, at *2 (W.D. Va. Jun. 26, 2018) (citations omitted); *Robinson v. Ryan*, CIV 11–1383–PHX–GMS (MHB), 2012 WL 1752995 at *5 (D. Ariz. May 16, 2012) ("Where, as in this case, Petitioner pled guilty, such admission of culpability mitigates strongly against a subsequent finding of actual innocence"), *R.&R. adopted*, 2012 WL 2092089 (D. Ariz. Jun. 11, 2012). A

petitioner claiming innocence after first pleading guilty faces the maxim, "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). With these authorities in mind, the court will address Pipkin's claim of actual innocence.

### The State's Factual Basis for Pipkin's Guilty Plea

The State described the facts it intended to prove "beyond reasonable doubt and with credible admissible evidence," and *Pipkin, through counsel, agreed that the State would be able to prove those facts*. First, three males (Devonta Pipkin, Nicholas Sledge, and Quinn McNeal) – and two females (LaShuandra McNeal and Kristie Farrow) – gathered on July 18, 2013, to plan an armed robbery, in their words, to "go hit a lick." Doc. 6-1 at 22. They selected the victim because they believed he would have his paycheck. *Id.* LaShuandra was the driver, and Farrow knocked on the victim's door. *Id.* Once the victim opened the door, the three men (including Pipkin) rushed into the trailer and threatened the victim, demanding money and drugs. Doc. 6-1 at 19-20, 22. At least two of the men were armed with handguns (Sledge with a .40 caliber and Quinn McNeal with a .45 caliber.) *Id.* at 22-23. After some shouting and a scuffle, they opened fire on the victim, killing him, and .40 and .45 projectiles were recovered at the scene. *Id.* at 19-20, 22-23. They took a wallet and some change from the victim's residence. *Id.* at 22. A witness had seen three black males running from the victim's trailer park to Ms. Portia Burton's residence. *Id.* at 21. When interviewed by law enforcement, Ms. Burton relayed information about the three men who arrived that night, identifying Devonta Pipkin. *Id.* In addition, law enforcement recovered Pipkin's blood from Ms. Burton's carport (as confirmed by a DNA match at the State Crime Lab). *Id.* Indeed, the State gleaned much of the information contained in the factual basis from the statements from all four Pipkin's co-defendants. *See Pipkin*, 296 So. 3d at 92–93.

Pipkin agreed with the factual basis multiple times – clearly and unequivocally – during his change of plea and sentencing hearing:

> **Court:** Is there anything that the State said that they could prove against you that you dispute, disagree with, or need to get cleared up?
>
> **Pipkin:** No, sir.
>
> …
>
> **Court:** Do you in fact admit, Mr. Pipkin, that as set forth in the reduced charge of deliberate design murder, that on July 8th of 2013, you along with your co-defendants, while acting in concert one with the other in furtherance of a conspiracy, did in fact shoot and kill with deliberate design without authority of law by the use of a deadly weapon, Emanual Gomez, in violation of Mississippi Code Section 97-31-19(1)(a)?
>
> **Pipkin:** Yes, sir.
>
> **Court:** You admit your guilt?
>
> **Pipkin:** Yes, sir.
>
> **Court:** And are you asking this Court to accept your plea of guilty?
>
> **Pipkin:** Yes, sir.

Doc. 6-1 at 24, 30-31. In addition, near the end of the hearing, Mr. Pipkin stated:

> I'm sorry for the way it happened. I'm sorry for the way it happened, but I just – a guess I was at the wrong place at the wrong time. *It wasn't supposed to happen like that* is all I got to say.

*Id*. at 35 (emphasis added).

### The Four Affidavits from the Other Defendants

Pipkin has provided affidavits from all four of his codefendants to support his claim that he is actually innocent of deliberate design murder. Doc. 6-1 at 66; Doc. 6-6 at 20, 22, 23. Two of the affidavits (those of Quinn McNeal and Nicholas Sledge) are essentially identical in verbiage, with the relevant language: "Devonta Pipkin did not conspire or participate in the events that [led] to the death of Emanuel Gomez on or about July 8, 2013 in Tate County, Mississippi." The other two (those of Kristie Farrow and LaShuandra McNeal) are also nearly verbatim, with the relevant language: "I did

- 18 -

not conspire with Devonta Pipkin, nor do I have personal knowledge that Devonta Pipkin participated in the events that [led] to the death of Emanual Gomez on or about July 8, 2013 in Tate County, Mississippi." Pipkin's co-defendants have not explained why they now offer exculpatory statements contrary to the original inculpatory ones they provided to the State.

### Pipkin Has Not Proved Actual Innocence

In order to prove actual innocence to overcome of the one-year *habeas corpus* limitations period under the AEDPA, Pipkin must produce new, reliable evidence, not presented at trial – evidence sufficient to persuade the court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Pipkin, however, pled guilty to the offense, which greatly magnifies the difficulty of proving his innocence, as "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge, supra,* 431 U.S. at 74. He has not met this burden.

In this case a fair-minded juror could easily find Pipkin guilty beyond reasonable doubt, as he clearly participated in the crime (as an accomplice at the minimum): He "deliberately associate[d] himself in some way with the crime [of armed robbery] and participate[d] in it with the intent to bring about the crime."[5] *Brassfield v. State*, 905 So.2d 754, 757-758 (Miss. App. 2004) (discussing the level of involvement required to have participated in a crime as an accomplice). According to the State's proffer, which Pipkin affirmed, he participated in the planning of the armed robbery – and in illegally entering the victim's residence.

_____

[5] The shooting death of the victim during the course of the armed robbery gave rise to the charge of capital murder, which was lowered to deliberate design murder under Pipkin's plea agreement. *See* Miss. Code Ann. § 97-3-19(2)(e) (defining capital murder to include a killing during the course of a robbery); Miss. Code Ann. § 97-3-19(1)(a) (defining deliberate design murder). Pipkin's participation in the robbery, itself, was enough to support the charge of murder as an accomplice, even if he did not shoot the victim. *See* Miss. Code Ann. § 97-3-19(2)(e); *see also Brassfield*, 905 So.2d at 757-758.

The court acknowledges that it is unusual for four defendants to sign affidavits tending to exonerate another defendant. Nonetheless, the four generic affidavits claiming that Pipkin did not conspire or participate in the murder cannot overcome the State's proffer during the change of plea and sentencing hearing. The proffer is summarized in detail above, but it boils down to five factors: (1) Pipkin participated in the planning of the robbery; (2) Pipkin illegally entered the victim's residence with the other two men; (3) at least two third-party eyewitnesses place him at two locations with the other two men after the murder;[6] (4) DNA evidence (from his blood) corroborates that he was at Portia Burton's house (which is apparently within walking distance of the crime scene); and (5) the original statements of his co-defendants confirm his participation. In addition, near the end of the hearing, Pipkin inferred that he had conspired to participate in the crime in *some* way, as, in speaking about the incident, he told the trial court, "It wasn't supposed to happen like that …." Doc. 6-1 at 35. Based on this statement, *something* was supposed to happen, just not what actually transpired. Ultimately, the evidence of Pipkin's guilt described in the State's proffer is compelling.

In stark contrast, to support his claim of actual innocence, Pipkin offers nothing more than the generic statements of his co-defendants. He has not presented an alibi defense. He has not explained why Portia Burton and the anonymous witness would falsely place him with the other defendants as they all fled the scene. He has not explained the presence of his blood at a stop along the defendants' flight from the scene. He has not explained why he would unequivocally agree with the factual basis – and plead guilty to a murder he did not commit – thus facing a sentence of life imprisonment. In addition, Pipkin, who would certainly have been aware of his alleged innocence, could have sought exonerating statements from his codefendants

---

[6] The locations were at Ms. Butler's house and in the street on the way there.

before pleading guilty.   He did not do so.[7]   Instead, he listened as the prosecutor laid out the

facts showing his guilt, participated in a lengthy colloquy with the trial court discussing the

State's proffer and the consequences of pleading guilty, readily agreed that the facts were correct

– then pled guilty to the charge.   Indeed, "[a]ll the bulwarks of the fortress of defense are

abandoned by the plea of guilty....   The plea of guilty surrenders all defenses whatever and all

nonjurisdictional defects"   A. Bishop, Waivers in Pleas of Guilty, 60 F.R.D. 513, 525–526

(1974).   Finally, he has not explained why he waited years after his guilty plea to allege his

innocence.   Considering Pipkin's guilty plea, his lack of explanation – and the third-party

evidence – his actions and words simply do not align with those of an innocent man wrongfully

convicted of a crime.

Given the compelling evidence of Pipkin's guilt – and the scant and suspect evidence of

his innocence – the court finds that he has not shown that he is actually innocent of the offense,

and he may not rely on the actual innocence exception to overcome the federal *habeas corpus*

limitations period.   The deadline to file his federal petition was September 17, 2015, and he filed

it on November 15, 2023, over eight years too late.   As such, the instant petition for a writ of

*habeas corpus* must be dismissed as untimely filed.

### Infirmities in State Post-Conviction Proceedings Do Not Rise to the Level of a Federal *Habeas Corpus* Claim

Pipkin also alleges that, during his pursuit of State post-conviction collateral relief, the state

courts violated his right to due process and a trial by jury by failing to vacate his sentence.   Docs. 1, 2.

---

[7] Pipkin's claim of actual innocence also fails because the statements he relies upon did not contain new information; that information (that he did not commit the crime) was available before he pled guilty.   "Evidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [Pipkin's] personal knowledge or reasonable investigation.'"   *Tyler v. Davis*, 768 F. App'x 264, 265 (5th Cir. 2019), *cert. denied,* 140 S. Ct. 277 (2019) (citations omitted).

However, claims alleging "infirmities in state postconviction proceedings are not grounds for relief under § 2254." *In re Palacios*, 58 F. 4th 189, 190 (5th Cir. 2023) (citing *Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004) (other citations omitted). Pipkin also appears to argue that the court should vacate his conviction because he is actually innocent; however, actual innocence is not a freestanding claim for *habeas corpus* relief. *Id.* As such, these allegations will be dismissed with prejudice for failure to state a claim upon which relief could be granted.

**Conclusion**

For the reasons set forth above, the State's motion to dismiss will be granted, and the instant petition for a writ of *habeas corpus* will be dismissed with prejudice as untimely filed – and for want of substantive merit. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 28th day of May, 2024.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI